Good morning your honors. May I please the court Robert Hill for the appellant Marcos Valenzuela. I'd like to reserve two minutes of my time for rebuttal. Appellant knew that he was being audio and video recorded at the border checkpoint when the use of force occurred. He confirmed that knowledge when he explicitly asked multiple times for the opportunity to review that recording prior to authoring the report which forms the basis of the report. When he eventually wrote the report without being given the opportunity to review the video or the audio or speak with his use of force instructor or speak with the union representative he accurately recorded the material details of the incident including the fact that he used force where it occurred and when it occurred. Admittedly he recorded additional inaccurate details including conversations that occurred between him and the victim Mr. Lopez details about who said what in what order where they said things and also physical details of how quickly the incident occurred whether what posture people's bodies were positioned in prior to the use of force. Also whether he was waving his arms around and throwing things in the facts right? Well that's the worst one your honor and you know I would concede that. It still would be an outlier compared to the other reported cases and I think there's a through line when you look at those cases. The government makes the point and I absolutely agree that this doesn't have to be the worst case in order to have sufficient evidence support the convictions but when you look at cases like McQueen like Moore like these other cases we cite in our brief there's a couple principles that that I think are pretty apparent. One is that the falsification goes to the heart of the matter meaning whether force was used at all whether an incident even occurred. You have the case where the police officers beat a suspect to the point of unconsciousness and take him to the hospital and then they say we found him passed out under a bridge because he was using drugs. You have the case where the officers beat the the boyfriend who brought the cell phone into the county jail after separating him from his girlfriend so she wouldn't be a witness and then they say oh you know he had come after us with a weapon and that's why a fight ensued as opposed to a gang beating which was the case. Even in the non-violence cases you have the the case of the administrative officer who covers for his friend by not including the fact that his friend had confessed to him in a report. That goes to the very heart of the matter whether something happened or it didn't happen under what circumstances someone was injured. That that is different in kind than the falsification that occurred here not just different in degree. I mean maybe there's a I'm not I'm not sure why it's a difference in kind because the alleged falsity here is about you know the circumstance I mean it's not about whether there was a use of force but it's about whether the use of force was justified right and to understand whether the force was justified and you makes a difference whether the person against human force was used you know was belligerent and you know throwing things or was not right so. I think it does make a difference your honor for this reason. It goes to his intent he has to intend to impede or obstruct an investigation and when an officer is writing essentially let's put it in the light most favorable to the government because that's the standard here we have to. A self-serving account that makes his own conduct seem more reasonable than it probably was and makes the victim's conduct which precipitated it less reasonable than it probably was. That does not impede and obstruct an investigation in the same way that a wholesale cover-up does. I mean it doesn't impede it in the same way but it still impedes it doesn't it? I think it is fundamentally different. Why isn't this something that the jury decided? Well the jury did but and the point yeah repeatedly which I understand I would too if I was on the other side of the case but at the same time that's why we have sufficiency review. So you want to draw some kind of line? I think there does have to be a line and again going back to the other case at the second point I would make beyond. So I'm just confused you're basically saying like this as a legal matter this type of lie can't count is that really what you're saying? I'm saying it can count once it reaches a certain line and this is on the other side of the line and I'll give you a couple reasons why. When you have a cover-up when you have a case where the officers are either by themselves or in most of these cases working with each other to get the story straight in a situation where they honestly believe there's no way a third party after the fact can catch them and really they only get caught because either someone has an attack of conscience or some evidence they weren't aware of comes to light that contradicts the story that they put in their false report. That's one category of cases. In this case he knows he's being audio and video recorded so there's a factual impossibility problem where he can't get away with it. So your legal standard would be anything that's video recorded can never be a impeding of investigation? I don't I don't want to draw that line I want to add one more thing and then then draw a line which is if if he had only been aware let's say he testified I was aware that I was being audio and video recorded but you didn't have the additional step of asking to review the audio and video before authoring his report. But why isn't that just him I mean I think a lot of departments have rules against viewing video because it would allow you to craft your story to somehow be consistent with the video and also make things seem worse. So why don't we think I mean why couldn't the jury infer that he was only asking to see the video so that he could thread a needle? Well one point about the record I don't think they could have in this case because you testimony from the watch commander that he reviews the videos prior to evaluating these incidents that's at 174 in the in the excerpts of the record and you had the supervisor Bojanos say that it's standard policy on his department to review the videos. No I'm not saying the department can't but the accused officer I mean I think there's you often departments have as I understand it a policy that the accused officer can't see the video until the investigation is or whatever because otherwise they might testify in a way that tries to both match the video and say extra things. That may be true your honor another department I don't think that was the testimony here especially coming out from Bojanos at 310. The justification would be the same it doesn't matter whether they had that rule that the point is that reasonable people have the rule because if there's a justification for not permitting someone to view the video there's a good reason for that. They could I'm just I'm pointing out on this record I don't think that's necessarily the case here but even if it was I accept that that reasonable people could think that's a good policy to have I think that could also cut the other way that if the point is to produce accurate reports about what happened understanding that eyewitness testimony is inherently fallible because human memories are inherently fallible especially in a stressful situation in an unusual situation he's a border checkpoint guard he's not throwing people on the ground every shift he's not chasing down criminals on the beat I mean this was an unusual event in his life a violent event so if we want to produce the most accurate reports rather than sort of try to catch him in a lie potentially why wouldn't we have him review the video and audio report so I'm just saying if the standard is what's a reasonable policy to have I could see arguments both ways I don't think on this record we can say that it was an unreasonable request or that it was unusual in his department to request to review the videos and that's not the only request he made right he also asked to speak to his union representative he asked to speak to the use of force instructor on the department to get some guidance about whether what he did was justified and and how why would that be relevant to writing a report about what happened when you're articulating well let's talk about the report because it's police reports aren't written in my experience just as a narrative in in in common parlance they sometimes we call it cop speak among defense attorneys you know no one says I said get out of the car right now they say at that point I instructed the suspect to exit the motor vehicle you know the cop police officers are trained to write reports in a way that is consistent with their department's policy and is especially when they know they're going to be under scrutiny and I don't think that's a bad thing I think that's why we have an adversarial system if the reports end up being inaccurate they can be challenged in court later on and frankly that's why we have audio and video recordings in this day and age is so we don't have to rely on specific details in a narrative coming out exactly in the order and exactly in the way they happened so you know can I ask you to explain your mind absolutely so I think this is a perfect time to bring that in because that sort of goes to what I'm saying so just to refresh the timeline he goes home about eight hours passes it was slightly inconsistent it might have been ten hours might have been eight hours but he sleeps he eats he spent some time with his wife he's called back before he gets back he's informed that this Facebook post happened now I'm sure the government will raise the fact and I was not introduced in the record I didn't represent mr. Valenzuela at trial for whatever reason his trial counsel failed to file a written objection to the motion in limine and so the Facebook post itself was never introduced in the record below so the the trial judge never saw the actual post and he was prohibited mr. Valenzuela was from testifying to its contents when he was on the stand but he was informed at some point about the post before he wrote his report now the court your honors have seen the post it's inflammatory it's a endorsement of cop killing it's an encouragement I would say probably falling short of actual incitement but coming fairly close for others to kill police officers and the idea that that's not going to color his perception after the fact of how aggressive how threatening this person was I'd point the court to the supplemental excerpts of record I believe it's at page 8 where he's talking when he's writing his report and he makes some reference to mr. Lopez being aggressive and saying this is why people hate you meaning the police this is why they hate people like you and why they want to do bad things to you it's not hard to see how that sentence enters his mind even though your theory is that the Facebook post made him think that that statement had been said during the encounter I think it colored his recollection especially when he doesn't have access to the objective evidence that he requested access to to disabuse him of the fact that that was just to clarify the record you mentioned that the post was not introduced by trial counsel but it wasn't completely clear to me from the record that there was evidence that mr. Valenzuela had even seen the post before he prepared his report I mean I agree that's not clear on the record it's not clear on the record I think there's an inference based on the fact that the court cited its pretrial ruling in sustaining the government objective objection before he gets out the sentence about what he became aware of there's certainly a strong inference that he's referencing the post but I agree he didn't say the words Facebook post in this his attempted testimony he didn't do you want to reserve the remaining time I would thank you may have pleased the court Benjamin Hawley for the United States so picking up on that last point the Facebook post couldn't have been relevant to mr. Valenzuela's intent certainly as to the first count in terms of the the official takedown as it were and even as to the second because there was no argument or defense that maybe he was so scared by this or so rattled by it that he just couldn't remember details or he somehow was getting the report wrong and in fact a lot of the report was correct the day at a time the lane number who was involved license plates all of those details were correct it was just the details as to what he claimed would justify the use of force that were either mistaken in the fabrications in the government's view of it moreover the defense raised all of these factual arguments at trial mr. Valenzuela testified testified at length the jury heard his story as to both counts and necessarily evaluated his credibility necessarily rejected that when they found him guilty on both counts and so certainly considering the season certainly considering the evidence in the light most favorable to the government there's not enough there to overturn that the fact that other cases were worse I'm not as bad of a criminal isn't really a defense to sufficiency of the evidence the evidence here was sufficient I'm certainly happy to answer any of the course questions we'll submit thank you thank you I'm not sure how brief a rebuttal to give decision brief opposition just that there was no argument that he was scared and that colored his perception I don't think that I think that's overstating it there were arguments at trial that his awareness of or he tried to get in the fact that his awareness of events that happened after had colored his writing of the report and there certainly was a general argument that his perceptions of the event the refer to the adrenaline pumping had colored both the use of force and the way he wrote his report so maybe that's a quibble but thank you thank you thank you thank you both sides this case is submitted
judges: SCHROEDER, FRIEDLAND, MILLER